# Exhibit H

## U.S. v. Romero-Romero

## CR 07-0711 MMC

BARRY J. PORTMAN
Federal Public Defender
JODI LINKER
Assistant Federal Public Defender
19th Floor Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant ROMERO-ROMERO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) No. CR-07-711 MMC |
|---|---|
| Plaintiff, | ) **DECLARATION OF SANDRA EVELYN ROMERO** |
| v. | ) |
| OSCAR ERNESTO ROMERO-ROMERO, JR., | ) |
| Defendant. | ) |

Sandra Evelyn Romero states as follows:

1. I am the mother of the defendant in the above-captioned case. This declaration was composed with the assistance of my son's lawyer, Assistant Federal Public Defender Jodi Linker. This declaration does not necessarily include every detail that I remember. Rather, it includes those facts which Ms. Linker has advised me would be appropriate for inclusion.

2. My son Oscar Ernesto Romero-Romero, Jr. (hereinafter "Oscar") was born on May 11, 1980 in El Salvador. He has four siblings: (1) Hilda Cristabel Romero, born December 13, 1975 in El Salvador; (2) Sandra Jacqueline Romero, born February 27,

Decl. of Sandra Evelyn Romero
Case No. 07-711 MMC

1977 in El Salvador; (3) Ernesto Alonso Romero, born January 23, 1982 in El Salvador; (4) and Jancy Escarleth Romero, born April 1, 1984 in the United States.

3. Oscar Ernesto Romero Ventura (hereinafter "Mr. Ventura") is Oscar's biological father.

4. I came to the United States in 1983 with Mr. Ventura and all of our children, except Jancy, who had not been born yet. We left El Salvador to try to find a better life in the United States. We moved to Los Angeles, California to be near my mother. My children all attended public school in Los Angeles.

5. Mr. Ventura worked as a truck driver and I worked as a housekeeper.

6. On March 30, 1989, when he was eight yeas old, Oscar became a Lawful Permanent Resident of the United States.

7. Mr. Ventura and I were married on February 8, 1987 in Los Angeles, California. Our marriage was extremely difficult from the start. We often fought, and he physically abused me repeatedly.

8. In 1992, Mr. Ventura was deported from the United States after he was caught bringing another woman, Ada del Carmen Torres (hereinafter "Ms. Torres"), into this country illegally.

9. Mr. Ventura told me that he had been having an affair with Ms. Torres and that she was pregnant with his child. I was infuriated to learn this and it was clear to me that our marriage was over.

10. When he was deported in 1992, our marriage was over. At that point, we were no longer living together and I had no intention of continuing our marriage. I did not intend to ever be back together with him.

11. I did not file for divorce at that time because I did not see why it was necessary, and I also had a lot of family, cultural and religious pressure not to do so.

12. After Mr. Ventura was deported in 1992, all five of our children stayed with me, and I

maintained custody of all of our children.

13. When Mr. Ventura came back to the United States, he began living with Ms. Torres. I learned that Ms. Torres gave birth to their daughter, Tanya Romero, in September of 1991.

14. Mr. Ventura was a truck driver by occupation so he was often on the road. Even after we separated in 1992, he continued to use the addresses where I lived with our children as his mailing addresses, however, he did not reside with me at those addresses.

15. In 1996, I became a citizen of the United States. I truthfully indicated on my naturalization application that I was married because, although Mr. Ventura and I had separated, we had not divorced. If anyone asked me as part of my naturalization application if we were separated, I would have truthfully informed them that we were separated as of 1992. I also truthfully indicted on my naturalization application that all of my children were living with me.

16. When my son Oscar was placed in immigration proceedings in 2003, I hired a lawyer to assist him. I went to the Law Offices of Earl Carter, a lawfirm I understood to specialize in immigration proceedings. An attorney named Timothy Myers from Mr. Carter's office was assigned to my son's case.

17. Mr. Myers never asked me about my relationship with Mr. Ventura. Had he asked, I would have told him that Mr. Ventura and I had separated in 1992. In addition, had he asked me to file something with a court to establish that we had separated in 1992, I would have done so.

18. At Oscar's deportation proceedings in 2003 and 2004, I could have truthfully testified that at the time of my naturalization in 1996, Mr. Ventura and I were living separate and apart and there had been a final rupture of our marriage. That had been the situation since 1992. In addition, I believe that my daughters, Hilda and Sandra, and

1 | my son, Ernesto, who were also present at Oscar's deportation proceeding, could have
2 | testified to those facts.
3 |    19.   All three of my daughters, Hilda, Sandra and Jancy are United States Citizens. They
4 | all currently reside in Fontana, California.
5 | I DECLARE under penalty of perjury that the foregoing is true and correct to the best of my
6 | knowledge.
7 | Signed and dated on the 10 of June, 2008, in Fontana CA. 92335 (location).

                                                          *[signature]*
                                           SANDRA EVELYN ROMERO

### INTERPRETER CERTIFICATION

I, _____, hereby certify that I am a certified Spanish interpreter and that I accurately translated this declaration to Sandra Evelyn Romero over the telephone, she told me that she understood it, and I believe her answer was true and correct.

Dated: _____                                           _____
                                                                 Interpreter's signature

my son, Ernesto, who were also present at Oscar's deportation proceeding, could have testified to those facts.

19. All three of my daughters, Hilda, Sandra and Jancy are United States Citizens. They all currently reside in Fontana, California.

I DECLARE under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Signed and dated on the ___ of June, 2008, in _____ (location).

_____
SANDRA EVELYN ROMERO

### INTERPRETER CERTIFICATION

I, _Melinda Basker_, hereby certify that I am a certified Spanish interpreter and that I accurately translated this declaration to Sandra Evelyn Romero over the telephone, she told me that she understood it, and I believe her answer was true and correct.

Dated: 6/10/08                    _melinda Basker_
                                  Interpreter's signature

Decl. of Sandra Evelyn Romero
Case No. 07-711 MMC                              - 4 -