# Exhibit J

# U.S. v. Romero-Romero

# CR 07-0711 MMC

BARRY J. PORTMAN
Federal Public Defender
JODI LINKER
Assistant Federal Public Defender
450 Golden Gate Avenue
19th Floor
San Francisco, CA. 94102
Counsel for Defendant Oscar Ernesto Romero-Romero

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | DECLARATION OF ANGELA BEAN IN SUPPORT OF Oscar Ernesto Romero-Romero |
|---|---|---|
| ) | | |
| Plaintiff | ) | |
| ) | | |
| vs. | ) | |
| ) | | |
| Oscar Ernesto ROMERO-ROMERO | ) | |
| Defendant. | ) | |

I, Angela Bean, declare:

1. I am an attorney admitted to practice in all courts of the State of California and in this Court. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could testify to those facts under oath. I am submitting this declaration as an expert witness and certified specialist in Immigration and Nationality Law.

2. Though he was found to be an "alien" and ordered removed in January, 2004, Mr. Romero-Romero could have presented a claim to derivative citizenship based on his mother's naturalization. After a review of Mr. Romero Romero's immigration record, it is apparent that the failure to present this claim rests primarily on the ineffective assistance of his immigration counsel at the time.

3. Mr. Romero-Romero would be a citizen if, prior to his eighteenth birthday, he

was a permanent resident and either both of his parents naturalized or his parents had a legal separation and the parent with legal and actual custody naturalized.

4. Mr. Romero-Romero's immigration file indicates he was born May 11, 1980, and became a lawful permanent resident in 1989. Further, his mother became a United States Citizen on May 30, 1996, but his father never naturalized. Therefore, Mr. Romero-Romero is a United States citizen if his parents were legally separated between May 30, 1996 and May 10, 1998.

5. According to information provided in the removal proceedings, Mr. Romero-Romero's parents were still married and did not obtain a document establishing legal separation as of the hearing date. I also understand Mr. Romero-Romero and his family have indicated Mr. Romero-Romero's parents ceased living together as husband and wife in 1992, the same year Mr. Romero-Romero's father was deported. Further, Mr. Romero- Romero's mother had custody of Mr. Romero-Romero after the separation.

6. That Mr. Romero-Romero's parents did not have a legal separation order at the time of his hearing did not preclude his citizenship claim. From the facts presented, Mr. Romero-Romero's had a strong claim to derivative citizenship.

7. The Ninth Circuit has recognized that for citizenship purposes a "legal separation" is simply a "separation recognized by law". *Minasyan v. Gonzales*, 401 F.3d 1069, 1076 (9th Cir. 2005). For California, a "legal separation" commences when the parties "come to a parting of the ways with no intention of resuming marital relations". *Ibid*, at 1078.

8. As applied for citizenship, "legal separation" is distinct from, and can predate, a separation or dissolution order issued by a California state court. *Ibid.* For example, the court in *Minaysan* recognized a 1993 date of legal separation based on a 2001 order. *Ibid*, at 1079.

9. Therefore, despite not establishing his parents' legal separation date as of his removal proceedings, Mr. Romero-Romero could have established his citizenship claim if his parents had come to a parting of ways with no intention of resuming marital relations in 1992. At a minimum, such a possibility merited further consultation with a family law attorney.

10. Unfortunately, Mr. Romero-Romero's immigration attorney, Timothy Meyers, did not properly pursue his citizenship claim and failed to adequately represent Mr. Romero-Romero in several respects.

11. Perhaps most egregious is Mr. Meyers' apparent failure to file a Form N-600 application for certificate of citizenship despite his claim to the immigration court

on October 8, 2003 that he had already done so. The N-600 is a form filed with United States Citizenship and Immigration Services ("USCIS") as acknowledgment of derivative citizenship. Unlike naturalization, derivative citizenship is not a discretionary benefit, and therefore his criminal record would not have been an impediment to approval.

12. After a thorough review of the materials in Mr. Romero-Romero's file, however, I can find no evidence that Mr. Meyers ever filed an N-600 with USCIS. Such an omission is not only a failure to represent Mr. Romero-Romero properly but also an apparent misrepresentation to the immigration court.

13. Furthermore, Mr. Meyers could have presented Mr. Romero-Romero's citizenship claim in two other forms. First, he could have assisted Mr. Romero-Romero in applying for a U.S. passport. Such an application would have been adjudicated by the Department of State, rather than USCIS, and is an alternate means to document citizenship.

14. Second, Mr. Meyers could have pursued a motion to terminate the removal proceedings directly, on the ground that Mr. Romero-Romero was not an alien. An immigration judge must make an independent determination of alienage. Our office has successfully terminated clients' removal proceedings based on citizenship claims, even when there was an N-600 denial. Here there was no such denial, so it was even more likely that he could have terminated Mr. Romero-Romero's removal proceedings.

15. The failure to present a motion to terminate proceedings is especially problematic here because the immigration judge recognized that she could not proceed if Mr. Meyers were able to present a *prima facie* case for U.S. citizenship, thereby signaling to Mr. Myers that he could take action. Mr. Myers failed to sufficiently advocate for his client.

16. Even if proof of citizenship required judicial recognition that Mr. Romero-Romero's parents parted with no intention of resuming marital relations at some point prior to his eighteenth birthday, it certainly was within the duties of a competent attorney to discuss that with his client. Indeed, in other similar situations, I have not only identified the issue, but advised clients in consultation with family law attorneys to obtain the necessary order. Mr. Myers' failure to explore this issue with his client fell below the minimal standard of care.

17. In addition to a failure to present any evidence of citizenship, it appears Mr. Meyers did not sufficiently investigate Mr. Romero-Romero's family history in order to make such claims viable. From my understanding of accounts by Mr. Romero-Romero and his family, neither Mr. Meyers nor any of his colleagues asked about the circumstances of his parents' separation.

18. Such inquiry would have made apparent that Mr. Romero-Romero could present a strong citizenship claim. Moreover, such a claim would likely be greatly enhanced through referral of to a family law attorney to obtain the requisite legal recognition of the parents' separation in 1992.

19. It is true that *Minasyan* was issued after Mr. Romero-Romero's removal hearing. *Minsayan*, however, presented an issue of first impression, and therefore did not upset settled precedent. Mr. Myers, however, appears to have made no attempt to advocate for his client, research the issues, and even misrepresented himself in court. Therefore, Mr. Meyers' ineffective assistance is not due to unsuccessful advocacy, but rather by wholly failing to meaningfully advocate at all.

20. Moreover, even if the date of *Minsayan* mitigates the extent of Mr. Myers ineffectiveness, it remains undeniable that were Mr. Romero-Romero in removal proceedings currently, and represented competently, he would present a strong claim to citizenship to any of the three authorities (USCIS, Department of State, and the immigration court).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED Wednesday, June 11, 2008, Oakland, California.

*[signature]*

_____

Angela M. Bean
Attorney at Law
Oakland, California