# Exhibit L-3

# U.S. v. Romero-Romero

# CR 07-0711 MMC

# Transcription of Immigration Hearing of Oscar Ernesto-Romero-Romero, Jr. October 8, 2003

IJ: Immigration Judge
OR: Oscar Ernesto Romero-Romero, Jr.
GA: Government Attorney
TM: Timothy Meyers
UNK: Unknown

IJ: This is Immigration Judge Rose Peters conducting a removal hearing in San Pedro, California, on October 8th, 2003, in the matter of Oscar Romero-Romero, Jr. 41715825. On behalf of the respondent?

TM: Timothy Meyers, Your Honor. This is a closed hearing.

IJ: Alright, off the record.

TM: Thank you.

IJ: Back on the record, the courtroom's cleared of other respondents. There's other attorneys present. Is that agreeable with you counsel?

TM: Umm, yes, Your Honor.

IJ; Alright, umm, counsel, at the last hearing on September 2, the government offered a probation officer's report and supplemental report and you were going to state again any objection to that being marked as part of the record as exhibit 3. Any objection?

TM: No, Your Honor.

IJ: Ok, it will be marked as exhibit 3.

GA: Judge, while were at it I've got some additional conviction documents, I'd like to...

[*Long pause, counsel speaking softly at times, paper shuffling, nothing intelligible.*]

IJ: The government has handed you and I conviction records which reflect that on November 10, 1999, your client pleaded guilty to felony possession of cocaine, he was given deferred action, or deferred entry of judgment. The case came back on the calendar, June 25, 2002 on a probation violation, and at that time he was given 180 days in jail. Do these documents relate to your client?

TM: Yes, Your Honor.

IJ: Any objection if I mark them into the record as exhibit 4?

TM: No, Your Honor.

IJ: So marked. Alright and counsel, you have documents to submit?

TM: We have an application for withholding to submit today, Your Honor.

IJ: And what about you, umm, evidence regarding your, umm, citizenship claim?

TM: What we're waiting for, for, umm, that's been submitted to the service and they're going to have to adjudicate that since that's not for this court, so we'll go forward on this if they adjudicate that before then I guess we'll proceed on that because since this court can't adjudicate the N-600, then that's where it lies.

IJ: Well, that's true I can't adjudicate an N-600, but I can determine if he has a prima facie claim, which would mean I can't proceed with the removal hearing.

TM: Understand, Your Honor. We don't have that evidence available. We were trying to accumulate it from his mother as far as the . . . . The only issue that we have is whether or not father was out of the home and separated and we don't have that yet to submit to the court. I mean that's going to hinge on the whole issue, I've discussed it with the client, that this is what we're going to have to proceed on because we don't have any, any court documents showing, uhh, divorce or legal separation from his parents.

IJ: Oh, but, so, but you filed it with the N-600 without that proof?

TM: We filed the N-600 with what proof we did have which wasn't ample and we're anticipating it will be adjudicated and that the right decision will be made there. So were going to have to go forward on the withholding and relief under the convention against torture.

IJ: Alright, so let me have the original and the photocopies please.

TM: They are both originals, he just signed his signature on 2 copies.

IJ: Ok thank you. Does the government have fingerprints and photographs?

GA: I got uhh, just 2 photographs, so if I could ask you to give me one of them back.

IJ: And you have the fingerprints?

GA: I'm just going to see if I have them. I assume I do but, just don't know.

IJ:   Sir, is everything in this application uh, true and correct?

OR:   Yes, ma'am.

IJ:   Do you need to make any changes to the application before I have you sign it under oath that it is accurate as written?

OR:   No, ma'am.

IJ:   I need you to sign your name where indicated, and then print your name below your signature please. Did you find the fingerprints Mr. . . .

GA:   I'm looking for them judge, I'm afraid I, it looks like I don't have them, so I'm going probably have to have him sent out to processing when he leaves here, to get his fingerprints taken.

IJ:   Sir, please stand, raise your right hand and take an oath. Do you swear that you know the contents of this application form I-598, that you are signing including the attached documents and supplements are all true to the best of your knowledge and that no corrections were made by you or at your request?

OR:   Yes, sir.

IJ:   Thank you, please be seated. There are no attachments or supplements, any objection to the form I-589 being marked into the record as exhibit 5?

GA:   None, Your Honor.

IJ:   Will be so marked. Now I don't have any evidence in the file about either parents' naturalization, I just have his testimony on that I don't have the certificate of naturalization, or any other proof that either one of them was naturalized. Do you have that counsel?

TM:   Your Honor I don't have that at this time but we will be providing additional documents that we can prior to the individual hearing. Umm, including ...

IJ:   I think that should be in the record.

GA:   Umm, I got a copy of the CIS printout that shows that the mother nats . . . I don't think I have three copies though. Evelyn is that your mom? I've got that here, uhh, I'm sorry [UI].

UNK:  I've got two copies of her nats certificate too.

Page 3 of 5

[UI]

IJ: He's got the nat certificate? Alright. Any objections to the nat certificate?

GA: Thanks. No objection.

IJ: Being marked into evidence as exhibit 6.

GA: Uhh, no objections Judge.

IJ: Alright it shows that she naturalized on May 30, 1996.

IJ: And uh, the certificate reflects the mother's status as married. Alright and counsel you said the father never naturalized, right?

TM: No, he did not Your Honor.

IJ: And does government have that evidence?

GA: What I've got Judge is uhh, I've got the CIS on the father showing that he was deported. I think.

TM: I believe that's correct. I believe he was deported in like 1991.

IJ: Alright we'll mark the . . . and the mother's legally married to father?

TM: I believe that's still the status, yes, Your Honor.

GA: Uhh, Judge best I got is this, I'm sorry, [UI] mark it appropriate [UI] . . . shows he was deported; don't know if it shows when.

IJ: We'll forward the application to the state department for an advisory opinion. My next available date is November 14th at eight o'clock. Is that agreeable counsel?

TM: I believe so Your Honor. Yes.

IJ: Is that agreeable Mr. Benay?

GA: That's fine Judge.

IJ: Alright Sir, your next hearing will be umm, November 14th, 2003 at eight o'clock for a hearing on the merits of your withholding and torture application. Do you understand?

OR: Yes, sir, yes, ma'am.

IJ: On that date you need to be prepared with all of your evidence and all of your witnesses because that is the date that I will be making a decision in your case. Do you understand?

OR: Yes, ma'am.

IJ: Counsel will any of your witnesses be needing a umm, Spanish interpreter?

TM: Yes, Your Honor.

IJ: We will order a Spanish interpreter for the witnesses. Any objection if the central index system regarding the respondent's father is marked into the record as exhibit 7?

TM: No.

IJ: Your father's name is Oscar Ernesto Romero-Ventura?

OR: Yes, ma'am.

IJ: Will be marked into the record as exhibit 7. Alright hearing is adjourned to November 14, 2003 at 8 o'clock.

End of Hearing.